FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 26, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NOE CALDERA-LAZO,<br><br>　　　　　　Defendant. | No. 1:19-CR-2031-SAB-1<br><br>**ORDER DISMISSING INDICTMENT** |

Before the Court are Defendant's Motions to Dismiss, ECF Nos. 38, 39, 40, and 41. The Court heard oral argument on these motions on March 17, 2021. The United States was represented by Richard Burson. Defendant was represented by Paul Shelton. Defendant participated in the hearing by telephone.

Defendant requests that the Court find his two underlying removal orders void and therefore dismiss the Indictment against him. Alternatively, Defendant requests that the Court dismiss the Indictment on the grounds that the charging statute, 8 U.S.C. § 1326, is unconstitutional. The Court took the motions under advisement. Having reviewed the briefing, the parties' oral arguments, and the relevant caselaw, the Court grants Defendant's Second and Third Motions to Dismiss and dismisses the Indictment in this case.

//

//

//

**ORDER DISMISSING INDICTMENT # 1**

## Facts

The following facts are pulled from the Indictment, ECF No. 1; Defendant's First, Second, and Third Motions to Dismiss, ECF Nos. 38, 39, 40; and the Government's Responses to Defendant's First and Third Motion to Dismiss, ECF Nos. 45, 47.

Defendant is charged with Illegal Reentry in violation of 8 U.S.C. § 1326. It is alleged that Defendant is a citizen and national of Mexico who has been denied admission, excluded, deported, or removed from the United States on two separate occasions: (1) on or about December 8, 2007, at San Ysidro, California and (2) on or about July 30, 2014, at Del Rio, Texas, and he was then found in the Eastern District of Washington without the express consent of the Attorney General or Secretary of the Department of Homeland Security to reapply for admission into the United States.

Defendant first came to the United States in 1991 with his mother and three siblings—Defendant's grandfather was a legal permanent resident in the United States. In October 1991, his grandfather submitted a petition for status for his mother, which listed Defendant and his siblings as accompanying minors.

In December 1999, Defendant's mother, along with his siblings, went to a local immigration office in Yakima to attempt to file a petition for status for all her children. But because Defendant's mother's first petition for status had not yet been resolved, the immigration agent issued Notices to Appear ("NTA") to place her and her children into removal proceedings. Defendant was 19 years old at the time. The December 1999 NTA ordered Defendant to appear for a removal hearing in Seattle, Washington a date and time "to be set."

On August 10, 2000, attorney Paul Edmondson entered a notice of appearance on behalf of Defendant and his family members. Four days later, Mr. Edmondson appeared with Defendant's mother and two sisters before an immigration judge in Seattle—Defendant and his older brother were not present.

**ORDER DISMISSING INDICTMENT** # 2

Only Defendant's mother's case had been set for a hearing that day, but Mr. Edmondson asked the judge to conduct a hearing on all five cases. At the hearing, Mr. Edmondson conceded both proper service and removability for all respondents but moved for an indefinite continuance to allow time for Defendant's mother's petition for status to be resolved. The immigration judge thus issued a written Notice of Hearing ("NOH"), setting the next hearing date as November 27, 2000 by telephone. The hearing was subsequently continued to January 29, 2001.

Defendant was present for the January 29, 2001 removal hearing in Seattle, along with his attorney, mother, and siblings. The immigration judge did not confirm with Defendant whether he had personally received the NTA, reviewed it with his counsel, or if he had any objection to Mr. Edmondson conceding his removability. Mr. Edmondson noted that Defendant was turning 21 years old in August 2001, which would age him out of his mother's petition, so the judge agreed to reset the removal hearing for May 24, 2001.

However, on March 20, 2001, approximately two months before Defendant's hearing was scheduled to take place, Defendant and his older brother were involved in a home invasion. Defendant and his brother were arrested and placed in custody at the county jail. On March 22, 2001, immigration authorities sent a detainer to the county jail, but it did not indicate that Defendant had ever been served with an NTA. In May 2001, while Defendant and his brother were in custody, the immigration judge administratively closed their removal proceedings, to which Mr. Edmonson did not object. In July 2001, Defendant pled guilty to Second-Degree Assault, First-Degree Burglary, and Taking a Vehicle without Permission. In September 2001, Defendant's mother and sisters were granted legal permanent resident status. On December 5, 2002, Defendant was sentenced to 90 months in prison.

In November 2007, one month prior to Defendant's scheduled release, the United States moved to re-calendar Defendant's removal hearing, which the

**ORDER DISMISSING INDICTMENT** # 3

immigration judge scheduled for December 6, 2007 in Seattle. There is no record that Defendant was served with an NTA, NOH, or any other document between the administrative closure of Defendant's removal proceedings in May 2001 and Defendant's December 2007 removal hearing. However, Defendant still appeared at his December 2007 removal hearing by video from Tacoma and was assisted by a Spanish interpreter for the hearing. The immigration judge told Defendant that the court had tried to get in touch with Mr. Edmondson because he had previously represented Defendant in his immigration proceedings, but that it had failed to get a hold of him. The immigration judge then said that it was his understanding that Defendant no longer wanted Mr. Edmondson to represent him, which Defendant confirmed. It is unclear when or how the immigration judge learned that Defendant no longer wanted Mr. Edmondson's assistance, as Defendant alleges that he had had no contact with Mr. Edmondson since being arrested in 2001. The immigration judge also asked Defendant if he had received his NTA and appeal rights form, which Defendant confirmed. Finally, the immigration judge reviewed the substantive allegations in the December 1999 NTA and Defendant admitted to them.

After asking Defendant to confirm his criminal record, the immigration judge told Defendant that he was not sure whether Defendant would be eligible for any relief from removal due to his prior convictions. The immigration judge then asked Defendant: "do you simply want to go back to Mexico, or do you want to try and look for some basis for relief?" Defendant alleges that there were then two mistranslations between him and the immigration judge. First, Defendant alleges that the interpreter translated the immigration judge's question to "do you simply want to go back to Mexico and [inaudible, but most likely "return"] somehow?" Second, Defendant alleges that that he responded "yes, I want to do it," but the interpreter relayed this as "yes, I want to be deported."

**ORDER DISMISSING INDICTMENT** # 4

Defendant also alleges that he would have requested any available relief, including voluntary departure. But he alleges that the immigration judge did not explain that he was eligible for or could request voluntary departure. Additionally, the immigration judge did not explain that Defendant had a right to appeal the final removal decision.

The immigration judge issued a written removal order indicating that Defendant admitted his removability, did not make any applications for relief from removal, and waived his appeal rights. The written notice also informed Defendant that he was permanently barred from returning to the United States. Immigration authorities removed Defendant to Mexico on December 8, 2007.

There is no record of Defendant's reentry into the United States in the two years after his December 2007 removal. However, Defendant was seemingly present in the United States in 2009 and 2010, as Defendant has three criminal charges from this time.[1]

On August 10, 2011, Defendant once again attempted to reenter the United States. He presented himself for admission at a pedestrian port of entry in El Paso, Texas, and presented a U.S. Passport Card with someone else's name. The Customs and Border Protection Officer suspected that the passport was not Defendant's, so the officer questioned Defendant and referred him to a secondary inspection. Defendant admitted that he was a Mexican citizen with no legal permission to enter the United States before asking for an attorney and stopping the questioning.

That same day, on August 10, 2011, the immigration officers prepared a "Withdrawal of Application for Admission/Consular Notification" form. ECF No.

---

[1]The first was for making a false report in July 2009, the second was for possession of cocaine and marijuana with the intent to deliver in March 2010, and the third was an Indictment for illegal reentry in July 2010.

**ORDER DISMISSING INDICTMENT** # 5

40-6. This form noted that Defendant had been ordered removed by an immigration judge, but the section entitled "TO BE COMPLETED BY ALIEN WHEN APPLICATION FOR ADMISSION WITHDRAWN" is blank, suggesting that the immigration officers decided that Defendant was not a good candidate for withdrawal of application for admission. *Id.* at 1-2. The form also stated that "[Defendant] was processed for Expedited Removal with the concurrence of the shift supervisor . . .. A sworn statement was taken in which [Defendant] expressed no fear of his return to Mexico." *Id.* at 3. However, Defendant alleges that he did not give a sworn statement to immigration officers and there is no evidence of this sworn statement in the record. Finally, immigration officers prepared an Expedited Removal order, stating that Defendant was removable for falsely claiming U.S. citizenship to gain entry. ECF No. 40-7. But Defendant did not sign or initial this removal order.

Rather than immediately removing Defendant, the United States instead filed a criminal complaint in the Western District of Texas and subsequently indicted Defendant on September 7, 2011, charging him with attempted illegal reentry in violation of 8 U.S.C. § 1326 and improper use of another's passport in violation of 18 U.S.C. § 1544. On November 8, 2011 Defendant pled guilty to both charges and, in February 2012, was sentenced to 41 months' imprisonment.

On June 24, 2014, just before Defendant was due to complete his sentence, records show that Defendant gave a Sworn Statement to an immigration officer in Lubbock, Texas. Defendant alleges, however, that he has no recollection of giving this statement, does not recognize the signature on the statement, and does not recall any immigration officer ever showing him the Sworn Statement or reviewing it with him. ECF No. 40-9. According to the Sworn Statement, the immigration officer who spoke with Defendant did so in Spanish without the aid of an

**ORDER DISMISSING INDICTMENT # 6**

interpreter. *See id.* at 1.[2] The immigration officer asked Defendant questions about his parents' citizenship, his education, and whether he had any fear of persecution or torture if he were to be removed from the United States. *Id.* at 2-3. But the officer did not ask questions about Defendant's ties to the United States or his prior immigration history. Once Defendant completed his sentence on July 30, 2014, immigration officers removed him pursuant to the August 2011 expedited removal order.

Defendant's present case before the Court arose when, in March 2018, immigration authorities discovered that Defendant was in custody at the Yakima County Jail on two state court charges: Harassment with Threat to Kill and Second-Degree Assault Strangulation with Sexual Motivation.[3] Defendant pled guilty to these charges in December 2018 and was sentenced to 64 months' imprisonment. The Government then indicted Defendant on June 11, 2019 for Illegal Reentry, a violation of 8 U.S.C. § 1326. The Indictment is predicated on two underlying removal orders: (1) his December 6, 2007 removal order and (2) his August 10, 2011 expedited removal order.

### Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In

---

[2] Daniel Blackwell was both the interviewing immigration officer and the interpreter.

[3] Defendant states that he has collaterally attacked these state convictions in state court. He indicates the State of Washington has conceded that Defendant is entitled to relief and the parties hope to reach terms on an amended plea agreement.

**ORDER DISMISSING INDICTMENT** # 7

ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). But a district court can make preliminary findings of fact necessary to decide the pre-trial motion so long as the court's findings do not "invade the province of the ultimate finder of fact." *Id.* (internal quotation and citation omitted). Thus, a district court can make factual determinations before trial if the "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Id.* (internal quotation and citation omitted).

A predicate to a violation of 8 U.S.C. § 1326 is the existence and legal validity of a prior order of removal. *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014). Thus, a defendant charged with violating 8 U.S.C. § 1326 may challenge the validity of his underlying removal order. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004); 8 U.S.C. § 1326(d). But in order for a defendant to succeed on collaterally attacking his underlying removal order, the defendant must be able to satisfy the § 1326(d) requirements: that the defendant (1) exhausted any administrative remedies that may have been available to seek relief against the order; (2) the removal proceedings at which the order was issued improperly deprived the noncitizen of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair, which requires that the defendant show that "he suffered prejudice as a result of the defects" in the removal proceedings. 8 U.S.C. § 1326(d); *United States v. Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir. 2015). The defendant bears the burden of showing that he was prejudiced by the due process violation, which requires the defendant to show that it was plausible that he would have received some form of relief from removal had

**ORDER DISMISSING INDICTMENT** # 8

his rights not been violated in the removal proceedings." *Valdez-Novoa*, 780 F.3d at 915.

## Discussion

Defendant currently has four pending Motions to Dismiss before the Court. ECF Nos. 38, 39, 40, 41.

### 1. Defendant's First Motion to Dismiss, ECF No. 38

Defendant argues that Defendant's December 6, 2007 removal order was invalid because—due to defects in the charging document—the immigration court lacked subject-matter jurisdiction to issue the removal order. However, at oral argument, Defendant conceded that the arguments in this motion are foreclosed by the Ninth Circuit's recent decision in *United States v. Bastide-Hernandez*, 986 F.3d 1245 (9th Cir. 2021). Thus, the Court denies Defendant's First Motion to Dismiss, ECF No. 38.

### 2. Defendant's Second Motion to Dismiss, ECF No. 39

Defendant argues that his December 6, 2007 removal order was invalid based on two due process violations: (1) the immigration judge denied Defendant a genuine opportunity to apply for relief from removal and (2) the immigration judge failed to advise Defendant of his right to appeal. More specifically, Defendant argues that the immigration judge failed to ask him if he wanted to apply for voluntary departure or explain to him what voluntary departure was. Defendant also argues that the immigration judge failed to ask him if he wanted to waive his right to appeal or even explain that he had a right to appeal, even though the immigration judge indicated in the written removal order that Defendant had waived this right. Defendant argues that these due process violations deprived him of a meaningful opportunity for judicial review and therefore rendered his removal proceedings fundamentally unfair. He also argues that he has shown prejudice because it is plausible that he would have received relief. Thus, Defendant argues the Court should find his December 6, 2007 removal order invalid.

ORDER DISMISSING INDICTMENT # 9

The Government concedes that the immigration judge violated Defendant's due process rights by failing to advise him of voluntary departure and his right to appeal. It argues, however, that because Defendant cannot show these procedural violations affected the outcome of his removal proceedings, he cannot meet the prejudice prong of § 1326(d)(3). Specifically, the Government argues that Defendant was not prejudiced by the immigration judge's failure to advise him of voluntary departure because either (1) Defendant was statutorily barred from such relief or (2) the immigration judge could not have plausibly granted him such relief. Furthermore, the Government argues that, because Defendant was not eligible for relief in the form of voluntary departure, he was not prejudiced by the immigration judge's failure to advise him of his right to appeal.

> a. *Whether Defendant was prejudiced by the immigration judge's failure to advise him of voluntary departure*

A noncitizen is eligible for voluntary departure in lieu of removal if the immigration judge finds that: (1) the noncitizen has been physically present for a period of at least one year immediately preceding the date the NTA was served; (2) the noncitizen has been a person of good moral character for at least 5 years immediately preceding the application for voluntary departure; (3) the noncitizen is not deportable for an aggravated felony or terrorist activities; and (4) the noncitizen has established by clear and convincing evidence that the noncitizen has the means to depart the United States and intends to do so. 8 U.S.C. § 1229c(b)(1). Whether an immigration judge chooses to grant voluntary departure is a matter of discretion. *Delgado-Chavez v. I.N.S.*, 765 F.2d 868, 869 (9th Cir. 1985).

When the record before the immigration judge "contains an inference" that the noncitizen is eligible for voluntary departure, "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran-Enriquez v. I.N.S.*, 884 F.2d 420, 422-23 (9th Cir. 1989)). If the immigration judge fails to advise him

**ORDER DISMISSING INDICTMENT** # 10

of the possibility of voluntary departure or fails to give him an opportunity to develop the issue, the defendant can show a due process violation sufficient to satisfy § 1326(d)(1) and (2). *Id.*; *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (stating that, when a noncitizen is not made aware that he has the right to seek relief, he is exempted from showing exhaustion of administrative remedies and deprivation of a meaningful opportunity for judicial review; *see also United States v. Cruz-Aguilar*, 394 F. Supp. 3d 1313, 1322 (E.D. Wash. 2019) (holding that the immigration judge violated due process by failing to give the defendant a genuine opportunity to develop the issue of voluntary departure). But under § 1326(d)(3), the noncitizen must still show that "he suffered prejudice as a result of the defects" in the removal proceedings. 8 U.S.C. § 1326(d)(3); *Valdez-Novoa*, 780 F.3d at 914.

To show prejudice, the noncitizen must show that there was a "plausible ground for relief from deportation." *Arrieta*, 224 F.3d at 1079 (internal quotation and citation omitted). This means that the noncitizen must show more than a "theoretical" possibility of relief but does not have to show that relief was "probable." *United States v. Raya-Vaca*, 771 F.3d 1195, 1207 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020). In determining whether voluntary departure is a plausible ground for relief, the Court must use a two-step process. *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015). First, the Court must look at the same positive and negative equities that would be relevant to an immigration judge's discretionary decision to grant voluntary departure. *Id.* Positive factors include long residence, close family ties to the United States, and humanitarian needs. *Id.* Negative factors include the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character. *Id.*

**ORDER DISMISSING INDICTMENT** # 11

Second, the Court must determine whether, considering the equities and circumstances of Defendant's case, Defendant has shown that it is plausible that he would have received relief. *Id.* In assessing whether Defendant has carried his burden, the Court looks at whether other noncitizens under similar circumstances received relief. *Id.* at 928.

The Government makes two arguments for why Defendant was not prejudiced by the immigration judge failing to advise him of voluntary departure at his December 6, 2007 removal proceedings. First, the Government argues that Defendant's March 23, 2001 charge of First-Degree Burglary was an aggravated felony and therefore Defendant was statutorily barred from receiving voluntary departure. Second, the Government argues that—even if Defendant were statutorily eligible for voluntary departure—it is not plausible that he would have received it. The Court examines each of these arguments in turn.

i. **Whether Defendant's 2001 burglary conviction counts as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G)**

When determining whether a defendant's previous conviction counts as an aggravated felony under § 1103(a)(4)(G) and thereby whether the previous conviction was grounds for removal, the Supreme Court has adopted an approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990) and further explained in *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243 (2016). Though both *Taylor* and *Mathis* arose in the context of the Armed Career Criminal Act, the approach used in those cases has also been adopted and applied to immigration cases. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 187 (2007); *see also Mathis*, 136 S. Ct. at 2252 n.2.

"To determine whether a prior conviction is for generic burglary . . . courts apply what is known as the categorical approach: [t]hey focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic

**ORDER DISMISSING INDICTMENT** # 12

burglary, while ignoring the facts of the case." *Mathis*, 136 S. Ct. at 2248. The Court must compare the elements of "generic burglary," which the Supreme Court defined in *Taylor*, with the elements of the Washington burglary statute under which Defendant was convicted. If the elements contained in the burglary statute under which Defendant was convicted were the same or narrower than those in the generic federal definition, then Defendant's conviction counts as a "burglary" under federal law. *Id.* But, if the burglary statute under which Defendant was convicted covers more conduct than the generic offense, then Defendant's conviction was not a "burglary" under federal law, even if Defendant's actual conduct would fall under the generic offense. *Id.*

8 U.S.C. § 1101(a)(43)(G) includes in its definition of "aggravated felony": "a burglary offense for which the term of imprisonment at least one year." The elements for the generic offense of burglary set forth in *Taylor* are: (1) unlawful entry into; (2) a building or structure; (3) with the intent to commit a crime. *Taylor*, 495 U.S. at 599. The elements for burglary in the first degree under the Washington statute are (1) unlawful entry into a building; (2) with the intent to commit a crime; (3) while entering or in flight from the building, the defendant or another participant in the crime was armed with a deadly weapon or assaults any person. Wash. Rev. Code § 9A.52.020.

The Ninth Circuit has previously applied the categorical approach to a Washington burglary statute. *United States v. Wenner*, 351 F.3d 969 (9th Cir. 2003). In *Wenner*, the Circuit noted that the definition of a "building" relied on by the Washington residential burglary statute included places beyond the word's ordinary meaning, such as a fenced area, a railway car, or a cargo container. *Wenner*, 351 F.3d at 972; *see also* Wash. Rev. Code § 9A.04.110. The Circuit also noted that the Supreme Court in *Taylor* specifically stated that some states defined burglary more broadly than the federal definition by including places such as cars, vending machines, booths, tents, boats, and railway cars. *Wenner*, 351 F.3d at 972.

**ORDER DISMISSING INDICTMENT** # 13

Thus, it held that, because the Washington statute was broader than federal law, a conviction under a Washington burglary statute was not a "burglary" under *Taylor*.

Here, Defendant's statute of conviction—§ 9A.52.020—is bound by the definitions under § 9A.04.110, so *Wenner* is controlling. *See also United States v. Gomez*, No. 2:04-CR-2126-RMP, 2016 WL 1254014, at *5–6 (E.D. Wash. Mar. 10, 2016) (applying *Wenner* to find that a Washington burglary conviction was not a burglary conviction under *Taylor*). Thus, Defendant's 2001 burglary conviction was not a burglary conviction under *Taylor* and therefore cannot count as an aggravated felony under § 1101(a)(43)(G) to preclude Defendant's eligibility for voluntary departure. *Valdivia-Flores*, 876 F.3d at 1210 (finding that, because the defendant's drug trafficking conviction did not qualify as an aggravated felony under the categorical approach, it could not support the asserted basis for the defendant's removal).

The Government argues that *Valdivia-Flores* is inapplicable to this case because "[t]hat decision was issued a decade after the Defendant's removal hearing" and that "'IJs are not expected to be clairvoyant' when discharging their duty to inform." ECF No. 46 at 17 (citation omitted). But even though *Valdivia-Flores* was decided in 2017 and Defendant was removed in 2007, the Supreme Court in *Gonzales* stated that lower courts had routinely applied the *Taylor* categorical approach in immigration cases and cited examples dating back to 2001. *Gonzales*, 549 U.S. at 185-86. Moreover, *Valdivia-Flores* involved a defendant's collateral attack on his 2009 removal order on the basis that his 1997 conviction was not an aggravated felony. The Ninth Circuit in *Valdivia-Flores* did not raise any retroactivity concerns about applying the categorical approach to determine whether that defendant's 1997 conviction—a conviction even older than Defendant's—was an aggravated felony and thus a proper basis for removal.

The Government also cites *United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013), for the proposition that an immigration judge is not obligated to

**ORDER DISMISSING INDICTMENT # 14**

inform a noncitizen of rights decided after the noncitizen's removal hearing. But Defendant is not arguing that he should have been informed about rights that did not exist at the time of his removal hearing. Instead, he is arguing that he should have been informed about his eligibility for voluntary departure, an argument based on *Taylor* that already existed in 2007.

Therefore, because Defendant's 2001 burglary conviction was not an aggravated felony under § 1101(a)(43)(G), Defendant was statutorily eligible for voluntary departure at his December 6, 2007 removal proceedings.

       ii.  **Whether Defendant has shown plausible grounds that the immigration judge would have granted him voluntary departure**

Because the parties agree that the immigration judge violated Defendant's due process rights by failing to advise him of voluntary departure, Defendant has satisfied 8 U.S.C. § 1326(d)(1) and (2). *See* ECF No. 46 at 18-22. As for § 1326(d)(3), the Court finds that Defendant could have plausibly received voluntary departure and therefore the immigration judge's failure to advise him of this relief prejudiced him. The Court concedes that Defendant's March 2001 burglary conviction was serious and thus casts doubt on whether the immigration judge would have found that Defendant was of good moral character.[4] However, the inquiry does not stop there. The question is not how this Court would have decided

---

[4] Though 8 U.S.C. § 1229c(b)(1) requires that the immigration judge find that the Defendant "has been a person of good moral character for at least 5 years immediately preceding the application for voluntary departure," the Ninth Circuit has clarified that the immigration judge can look beyond the five-year period when deciding whether to grant voluntary departure. *Villanueva-Franco v. I.N.S.*, 802 F.2d 327, 330 (9th Cir. 1986) ("The five-year period is 'necessary but not sufficient for a finding of good moral character.'").

**ORDER DISMISSING INDICTMENT # 15**

the issue, either now in 2021 or back in 2007. Instead, the question is whether it is plausible that an immigration judge would have provided the requested relief if he had properly reviewed Defendant's positive and negative equities. *Gonzalez-Flores*, 804 F.3d at 927. Here, Defendant's criminal history was a significant negative equity. But Defendant also had multiple significant positive equities in his favor. At the time of his December 6, 2007 removal proceedings, Defendant had lived in the United States with his family for approximately 15 years. Defendant also had close family ties to the United States—Defendant's grandfather was a lawful permanent resident when Defendant came to the United States, whereas his mother and sisters became lawful permanent residents in 2001. Finally, Defendant had no history of any other immigration violations. Even his initial removal proceedings, which began in 2000 and which were re-calendared for 2007, were only prompted by Defendant's mother contacting immigration authorities and trying to file a petition for status for herself and her children in December 1999.

Moreover, noncitizens in similar circumstances have received relief. *Gonzalez-Flores*, 804 F.3d at 928. Here, Defendant has cited two cases—*In Re: Luis Alonzo Gonzales-Figeroa*, 2006 WL 729784 (B.I.A. Feb. 10, 2006), and *In Re: Pineda-Castellanos, Juan Javier*, 2005 WL 3833024, at *2 (B.I.A. Nov. 16, 2005)—where noncitizens with serious criminal histories were still granted voluntary departure.

In *Pineda-Castellanos*, the Board of Immigration Appeals ("BIA") affirmed the immigration judge's grant of voluntary departure, even though the noncitizen had at least six criminal convictions for illegal entry, battery, drunkenness, threatening, a second battery, and driving under the influence. *Pineda-Castellanos*, 2005 WL 3833024 at *1. Similarly, in *Gonzales-Figeroa*, the BIA affirmed the immigration judge's grant of voluntary departure, even though the noncitizen had four convictions for assault, a conviction for resisting arrest, and numerous other arrests from 1995 to 2002. *Gonzales-Figeroa*, 2006 WL 729784 at *1. In

**ORDER DISMISSING INDICTMENT** # 16

*Gonzales-Figeroa*, the BIA noted that the immigration judge properly exercised his discretion in granting voluntary departure because the noncitizen's favorable factors outweighed his convictions and arrests. Specifically, the noncitizen had lived in the United States for nearly 20 years; his mother was a lawful permanent resident of the United States and had also filed a visa petition on his behalf; his sister and two nieces were United States citizens; and he was seeking treatment for his substance abuse. *Id.* at *1-2.

These two cases show that it is plausible that Defendant could have received voluntary departure. The noncitizens in *Pineda-Castellanos* and *Gonzales-Figeroa* both had lengthier criminal histories than Defendant—albeit for slightly less serious offenses—yet still received voluntary departure. Additionally, Defendant— like the noncitizen in *Gonzales-Figeroa*—had multiple positive equities in his favor that an immigration judge could have found outweighed his criminal convictions. Thus, because it is plausible that Defendant could have received voluntary departure, the Court finds that the immigration judge's failure to advise him of this relief rendered Defendant's December 6, 2007 removal proceedings fundamentally unfair.

      b.   *Whether Defendant was prejudiced by the immigration judge's failure to advise him of his right to appeal*

A noncitizen can also show his due process rights were violated if an immigration judge fails to inform him of his right to appeal or to obtain a knowing waiver of his right to appeal a removal order. *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014). A valid waiver must be both considered and intelligent. *Valdivia-Flores*, 876 F.3d at 1205. The Government must show by clear and convincing evidence that the waiver was valid and cannot simply rely on the signed document. *Id.* If a defendant shows that he was not informed of his right to appeal or did not validly waive his right to appeal his removal order, he can show a due process violation sufficient to satisfy § 1326(d)(1) and (2). *Arrieta*, 224 F.3d at

1079; *Melendez-Castro*, 671 F.3d at 954. If a court finds that the defendant was deprived of his appeal rights, it can also presume prejudice under § 1326(d)(3), though the defendant must still be able to show a plausible ground for relief. *Siong v. I.N.S.*, 376 F.3d 1030, 1038 (9th Cir. 2004); *Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000).

Here, at the end of Defendant's 2007 removal hearing, the immigration judge first asked the government's attorney if he believed that Defendant was knowingly waiving his rights, to which the government's attorney responded yes. ECF No. 39-12 at 4:45-4:53. The immigration judge then asked the government's attorney if the United States was waiving its right of appeal, to which the government's attorney once again responded yes. *Id.* at 4:54-5:01. After this, the immigration judge concluded the hearing without asking Defendant if he was waiving his right of appeal. However, on the written removal order, the immigration judge indicated that Defendant had made no application for relief from removal. ECF No. 39-11.

The parties once again agree that, because the immigration judge violated Defendant's due process rights by failing to advise him of his appeal rights, he has satisfied 8 U.S.C. § 1326(d)(1) and (2).

As for § 1326(d)(3), the Court can presume prejudice when Defendant is denied his appeal rights. *Siong*, 376 F.3d at 1038; *Dearinger*, 232 F.3d at 1045. Additionally, as already discussed above, Defendant has shown that he plausibly could have received relief in the form of voluntary departure. Thus, the Court finds that the immigration judge's failure to advise him of his appeal rights rendered Defendant's December 6, 2007 removal proceedings fundamentally unfair.

Because Defendant has satisfied the requirements for a collateral attack under § 1326(d), Defendant's December 6, 2007 removal order cannot serve as the basis for the present unlawful reentry charge. Therefore, the Court grants

**ORDER DISMISSING INDICTMENT** # 18

Defendant's Second Motion to Dismiss and moves onto Defendant's August 10, 2011 expedited removal order.

### 3.    Defendant's Third Motion to Dismiss, ECF No. 40

Defendant has also been charged with illegal reentry based on his August 10, 2011 expedited removal order.

Defendant argues that this removal order was invalid based on three due process violations: (1) he was not advised of his right to withdraw his application for admission in lieu of being removed, which he would have done had he been advised of this right; (2) the immigration officer failed to review his Sworn Statement with him or read it back to him before making the decision to remove Defendant; and (3) the immigration officer failed to have him sign the back of his Expedited Removal Order. ECF No. 40 at 9. Defendant argues that these due process violations deprived him of a meaningful opportunity to seek relief from removal and therefore rendered his removal proceedings fundamentally unfair. Defendant also argues that he has shown prejudice because it is plausible that he would have received relief.

The Court examines each alleged violation in turn to determine whether a due process violation occurred.

### a.    *The immigration officer's failure to advise Defendant of withdrawal of application for admission*

The Attorney General may, in his discretion, permit any noncitizen applicant for admission to withdraw his application for admission in lieu of removal. 8 C.F.R. § 1235.4.

The Ninth Circuit in *Raya-Vaca* was presented with the argument that an immigration officer's failure to advise a defendant of the possibility of withdrawing his application for admission constituted a due process violation, though the Circuit declined to rule on this issue. *Raya-Vaca*, 771 F.3d at 1206 n.9

**ORDER DISMISSING INDICTMENT** # 19

But the Ninth Circuit held in a previous case, *Sanchez-Aguilar*, that an "immigration officer's failure to inform [the defendant] of his ability to request withdrawal of his application for admission did not violate his due process rights." *United States v. Sanchez-Aguilar*, 719 F.3d 1108, 1111-12 (9th Cir. 2013).

Thus, though this Court believes that immigration officers should advise arriving noncitizens of their eligibility of any forms of relief short of deportation, the Court is bound by *Sanchez-Aguilar*.

        b.    *The immigration officer's failure to review the Sworn Statement with Defendant*

Once a noncitizen is deemed inadmissible, the immigration officer must determine whether the noncitizen will be subject to expedited removal. *See* 8 C.F.R. § 235.3(b)(2)(i). Expedited removal provisions apply if a noncitizen is an "arriving alien," which is defined as an applicant for admission coming or attempting to come into the United States at a port-of-entry. 8 C.F.R. § 235.3(b)(1)(i); 8 C.F.R. § 1.2. Here, because Defendant arrived at a port-of-entry, he was subject to expedited removal.

8 C.F.R. § 235.3(b)(2)(i) requires immigration officers to provide a noncitizen subject to expedited removal with certain procedural protections. For example, the immigration officer must take a sworn statement using Form I-867AB ("Record of Sworn Statement in Proceedings"), which creates a record of the facts of the case and statements made by the noncitizen. 8 C.F.R. § 235.3(b)(2)(i). To do so, the immigration officer must read the noncitizen all the information contained on Form I-867A and—following questioning and recording of the noncitizen's statements regarding identity, alienage, and inadmissibility— record the noncitizen's responses to the questions contained on Form I-867B. *Id.* The immigration officer must also read the noncitizen the statement and have the noncitizen sign and initial each page of the statement, as well as each correction if

**ORDER DISMISSING INDICTMENT** # 20

applicable. *Id.* § 235.3(b)(2)(i) specifically states that "[i]nterpretive assistance shall be used if necessary" to communicate with the noncitizen.

The Ninth Circuit has found that an immigration officer's failure to inform a defendant of the charge against him and provide him the opportunity to review the sworn statement is a violation of due process. *Raya-Vaca*, 771 F.3d at 1204. Additionally, multiple district court cases have found that an immigration officer's failure to review a sworn statement with a noncitizen and read it back to him prior to removal is, in and of itself, sufficient to constitute a due process violation. *United States v. Vicente-Vasquez*, No. 1:19-CR-02030-SMJ, 2019 WL 5703425, at *3–4 (E.D. Wash. Oct. 17, 2019); *United States v. Perez-Martinez*, No. 1:19-CR-02013-SAB-1, 2020 WL 3445673, at *4 (E.D. Wash. June 8, 2020).

The Court agrees with Defendant that an immigration officer's failure to review the sworn Statement with a noncitizen is a due process violation. The Circuit in *Raya-Vaca* explained that, while not every violation of an immigration regulation rises to the level of a constitutional violation, there are certain regulations that are designed to protect a noncitizen's fundamental due process rights. *Raya-Vaca*, 771 F.3d at 1204. Here, requiring an immigration officer to review the sworn statement with a noncitizen is likely the only opportunity a noncitizen in expedited removal will have to respond to the charge against him. *See United States v. Guzman-Hernandez*, No. 4:20-CR-06001-SMJ, 2020 WL 5585077, at *5 (E.D. Wash. Sept. 17, 2020) ("[I]n the context of an expedited removal proceeding, the opportunity to review the sworn statement is especially important because this single safeguard is often both the only opportunity for the alien to respond to the charge against him and the only record of the proceedings."). Thus, an immigration officer's failure to do so is a violation of due process.

The Government argues that—in this case—the evidence shows that the immigration officer did in fact review the June 24, 2014 Sworn Statement with

**ORDER DISMISSING INDICTMENT** # 21

Defendant because: (1) the form the immigration officer used to take Defendant's Sworn Statement was a Form I-877, which included Spanish translations of every question and advisal on the form; (2) because Defendant had been educated in the United States and can read English, he would have been able to read his own answers to the questions; and (3) Defendant signed a declaration, which was written in both Spanish and English, stating that he had read the Sworn Statement. *Id.*; *see also* ECF No. 40-9.

Defendant argues that he does not remember giving or reviewing the Sworn Statement with the immigration officer and does not recognize the signature on the Sworn Statement. ECF No. 40 at 5-6. Defendant also argues that there is no evidence that the immigration officer read the completed Sworn Statement back to Defendant or allowed Defendant to read the completed Sworn Statement before Defendant initialed and signed it, as is required by 8 C.F.R. § 235.3(b)(2)(i). ECF No. 54 at 5-6. Finally, Defendant argues that—though the Form I-877 used was written in both English and Spanish—the answers that the immigration officer recorded are only handwritten in English. *Id.* at 5. Thus, unless the immigration officer read the recorded answers back to Defendant in Spanish—who proceeded with the interview in Spanish because he was not comfortable with English—there is no reason for the Court to conclude that Defendant was able to review the recorded answers. *Id.*

Defendant's actual answers to the questions are only handwritten in English, which were presumably recorded by the immigration officer. ECF No. 40-9. Additionally, there is insufficient evidence that the immigration officer read Defendant's recorded answers back to him *in Spanish. Id.* at 3. Finally, the Court notes that the attestation clause states that Defendant's Sworn Statement consists of four pages, whereas the Sworn Statement submitted into the record only contains three pages. *Id.*

**ORDER DISMISSING INDICTMENT** # 22

The Court understands the difficulties of trying to prove whether an immigration officer did or did not read Defendant's answers to the Sworn Statement back to him in Spanish when the Sworn Statement was taken nearly seven years ago. But this problem is not always caused by old records and missing documents. Unfortunately, immigration officers often do not follow the required procedural rules, such as reviewing the Sworn Statement with the noncitizen prior to removal. *See, e.g.*, *United States v. Vicente-Vasquez*, No. 1:19-CR-02030-SMJ, 2019 WL 5703425, at *3 (E.D. Wash. Oct. 17, 2019) ("Agent Hernandez made clear that Defendant's initials on each page of the form I-867A do not mean that Defendant reviewed each page after it was printed—rather, Agent Hernandez testified that he simply directs aliens to initial after assuring them that the form contains the statements they made earlier."); *see also* ECF No. 40 at 12 (citing the United States Commission on International Religious Freedom study on expedited removal, which found that immigration officers did not review Sworn Statements in 72% of the studied cases).

Additionally, in the context of expedited removal, all procedural safeguards should be assiduously obeyed. During expedited removal, a noncitizen's Sworn Statement provides essentially the only record of the removal proceedings. Moreover, a noncitizen subject to expedited removal has no opportunity for judicial or administrative review. Thus, given that the procedures governing expedited removal are promulgated by the Department of Homeland Security itself, it is not unreasonable to expect these procedures are followed. In this case, the Court finds that the immigration officer's failure to follow the procedural rules constituted a due process violation sufficient to satisfy § 1326(d)(1) and (2).

c.    *The immigration officer's failure to get Defendant's signature on the Expedited Removal Order*

8 C.F.R. § 235.3(b)(2)(i) also requires immigration officers to advise the noncitizen of the charges against him on Form I-860 ("Notice and Order of

**ORDER DISMISSING INDICTMENT** # 23

Expedited Removal") and give the noncitizen an opportunity to respond to the charges. *Id.* Then, the immigration officer must serve the noncitizen with Form I-860 and have the noncitizen sign the reverse of the form to acknowledge receipt. *Id.*

Here, the Government concedes that neither Defendant's signature nor his initials appear on his Expedited Removal Order. ECF No. 40-7. But the Government argues that, because this regulation does not protect a fundamental due process right, the immigration officer's failure to have Defendant sign the Expedited Removal Order does not constitute a due process violation. Additionally, the Government argues that, even if this was a due process violation, Defendant cannot show that he was prejudiced because the purpose of requiring the noncitizen's signature is to acknowledge receipt—but here, an immigration officer signed the box stating that he had personally served the Expedited Removal Order on Defendant. ECF No. 47 at 14-17; *see also* ECF No. 40-7 at 1.

The Ninth Circuit has held that, if an immigration officer violates a regulation that is designed to protect a noncitizen's right to know the charge against him and to have an opportunity to respond to that charge, this constitutes a due process violation. *Raya-Vaca*, 771 F.3d at 1204. The regulation at issue here is exactly that type of regulation. The purpose of requiring an immigration officer to review the charges with the noncitizen and then have the noncitizen sign the back of the Expedited Removal Order is to provide the noncitizen notice of the charges against him and allow him an opportunity to respond—a basic tenet of due process. Because the immigration officer violated that regulation here, this is sufficient for a due process violation.

The Court is not persuaded by the Government's argument that, just because the immigration officer signed the certificate of service on the front of the I-860 form, Defendant was not prejudiced by the violation. Even if the immigration officer did serve the Expedited Removal Order on Defendant, there would still be a

**ORDER DISMISSING INDICTMENT** # 24

due process violation because (1) the officer's signature on the front of the I-860 form does not automatically demonstrate that Defendant was given notice of the charges against him and an opportunity to respond and (2) without Defendant's signature, there is insufficient assurance that his due process rights were protected during his expedited removal proceedings. *See United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 998-99 (D. Or. 2019).

Thus, the Court finds that the immigration officer's failure to have Defendant sign the back of the Expedited Removal Order was a due process violation sufficient to satisfy § 1326(d)(1) and (2).

> d. *Whether it is plausible that Defendant would have received relief*

The Court must next determine whether it is plausible that Defendant would have received relief. 8 U.S.C. § 1326(d)(3); *Arrieta*, 224 F.3d at 1079. Here, the only relief Defendant argues that he plausibly could have received during his expedited removal proceedings was withdrawal of application for admission. ECF No. 40 at 15-20.

When determining whether a noncitizen's request to withdraw his application for admission should be granted, an immigration officer relies on the guidance and factors set forth in the Inspector's Field Manual. 17.2 WITHDRAWAL OF APPLICATION FOR ADMISSION, 2007 WL 7710869 ("Field Manual"); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir. 2011) ("While the statute and regulation set forth scant guidance for the immigration officer to determine whether to grant withdrawal relief, the agency has prepared an internal document, an Inspector's Field Manual, to guide the immigration inspector's exercise of discretion."). The Field Manual states that withdrawal "may only be considered as an alternative to removal proceedings when the alien is not clearly inadmissible." It also instructs the immigration officer to "carefully consider all facts and circumstances related to the case to determine

**ORDER DISMISSING INDICTMENT** # 25

whether permitting withdrawal would be in the best interest of justice" and to balance "the relevant favorable and unfavorable factors," which include but are not limited to:

    (1) The seriousness of the immigration violation;
    (2) Previous findings of inadmissibility against the alien;
    (3) Intent on the part of the alien to violate the law;
    (4) Ability to easily overcome the ground of inadmissibility (i.e., lack of documents);
    (5) Age or poor health of the alien; and
    (6) Other humanitarian or public interest considerations.

If a noncitizen's application for admission is based on "obvious, deliberate fraud," the Field Manual states that "an expedited removal order is normally the appropriate response." But even where courts have found that noncitizens have committed a fraudulent act to try and reenter the United States, some have still found that it is plausible that noncitizens could have been allowed to withdraw their applications. *See United States v. Arizmendi-Depaz*, No. 18-CR-4949, 2019 WL 3945459, at *9–10 (S.D. Cal. Aug. 21, 2019); *United States v. Alvarez-Garcia*, No. 4:19-CR-06033-SMJ, 2020 WL 3445026, at *3 (E.D. Wash. June 9, 2020).

The Government argues that, because Defendant attempted to reenter the United States by relying on fraudulent documents, it is not plausible that Defendant would have been allowed to withdraw his application. Defendant argues that multiple courts have found that withdrawal of application for admission was plausible, even though the noncitizen committed a fraudulent act while attempting to reenter. ECF No. 40 at 16.

The Court finds that Defendant could have plausibly been allowed to withdraw his application for admission and therefore that Defendant was prejudiced by the due process violations. Defendant has provided evidence from two other expedited removal case files where noncitizens withdrew their applications for admission, despite relying on fraudulent documents and having a prior serious criminal history. For example, in *Jose Carlos Garcia*, a noncitizen

**ORDER DISMISSING INDICTMENT** # 26

was still granted withdrawal in 2009, despite (1) making a false claim to United States citizenship; (2) having previous convictions for vehicle theft and felon in possession of a firearm; and (3) having been previously lawfully removed once before in 2007. ECF No. 40-11. Similarly, in *Omar Argueta-Rosales*, a noncitizen was granted withdrawal in 2011, even though he had presented a fraudulent California birth certificate, social security card, and ID; had previously been removed twice in 2006 and 2010; and had been convicted under § 1326. ECF No. 40-12. Because these two cases involved noncitizens in similar situations to Defendant who received relief, this is sufficient to satisfy the plausibility standard. *Gonzalez-Flores*, 804 F.3d at 928. Thus, the Court finds that the violations of Defendant's due process rights rendered his August 10, 2011 expedited removal proceedings fundamentally unfair.

Because Defendant has satisfied the requirements for a collateral attack under § 1326(d), Defendant's August 10, 2011 expedited removal order also cannot serve as the basis for the present unlawful reentry charge. Therefore, because both of Defendant's underlying removal orders are invalid, the Court dismisses the Indictment.

4.   <u>Defendant's Fourth Motion to Dismiss, ECF No. 41</u>

Because the Court has already dismissed Defendant's Indictment under § 1326(d), the Court finds it unnecessary to reach the arguments in Defendant's Fourth Motion to Dismiss. Thus, the Court dismisses the motion as moot.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Defendant's First Motion to Dismiss, ECF No. 38, is **DENIED**.

2.   Defendant's Second Motion to Dismiss, ECF No. 39, is **GRANTED**.

3.   Defendant's Third Motion to Dismiss, ECF No. 40, is **GRANTED**.

4.   Defendant's Fourth Motion to Dismiss, ECF No. 41, is **DISMISSED as moot**.

**ORDER DISMISSING INDICTMENT** # 27

5.    The Indictment in the above-captioned matter is **DISMISSED with prejudice**.

6.    The trial date and any pending pretrial motions and deadlines are **STRICKEN**.

7.    Defendant shall be **RELEASED** from custody.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close** this file.

**DATED** this 26th day of April 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER DISMISSING INDICTMENT** # 28